IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARK E. PICKRELL,**

        **Plaintiff,**

      v.

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

Civil Action 2:20-cv-5478
Chief Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

## REPORT AND RECOMMENDATION

Plaintiff, Mark E. Pickrell, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 12). Plaintiff did not file a reply. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

Plaintiff protectively filed his application for benefits on February 21, 2018, alleging that he has been disabled since October 9, 2017, due to sciatica and plantar fasciitis. (R. at 195-198, 219.) Plaintiff's application was denied initially in July 2018 and upon reconsideration in

December 2018. (R. at 90-132.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 133-134.) ALJ Brian W. Wood held a video hearing on November 22, 2019, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 69-89.) A vocational expert ("VE") also appeared and testified. (*Id.*) On December 9, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 54-68.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.)

**II.    RELEVANT RECORD EVIDENCE**

    **A. Relevant Statements to the Agency and Hearing Testimony**

    The ALJ summarized Plaintiff's statements to the agency and relevant hearing testimony:

> [Plaintiff] alleges an inability to engage in sustained work activity due to pain and other symptoms caused by his impairments (Exhibit 2E/2). He reported ongoing sciatica pain, he has difficulty bending, twisting, lifting, standing, and sitting, and he lies down for the majority of the day (Exhibit 2E/18). [Plaintiff] testified that he experiences constant low back pain radiating into the left lower extremity, he can stand for one hour, he cannot sit for any protracted period of time, he is limited to lifting 20 lbs., he has flares of GERD once per month, he has difficulty sleeping, he must take frequent breaks when completing tasks, and he occasionally naps during the day.

(R. at 60-61.)

    **B. Relevant Medical Records**

    The ALJ summarized the relevant medical records concerning Plaintiff's lumbar spine impairment:

> [Plaintiff] has had multiple prior lumbar surgeries (Exhibits 1F/1; 2F/15; 7F/1). [Plaintiff] has had ongoing treatment for complaints of ongoing radicular discomfort into the left lower extremity (Exhibit 3F/5). [Plaintiff] had been prescribed medications for symptom management, including strong narcotic painkillers (Exhibit 3F/6). He had had physical therapy with no reported relief (Exhibit 3F/7; see also Exhibit 4F). Diagnostic imaging of the lumbar spine revealed no central canal stenosis at any lumbar level, although there were some discogenic changes (Exhibit 3F/14). [Plaintiff] reported intermittent, but daily, lower back pain radiating down the left leg to an internal medicine consultative examiner (Exhibit 7F/1). He has had chiropractic treatment (Exhibit 8F). He continued to report back pain with radicular symptoms (Exhibit 12F/14). He reported ongoing worsening sciatica pain that is worse in the evening hours (Exhibit 12F/20). [Plaintiff] rated his pain as a 2/10, but stated as the day goes on the pain does get worse (Exhibit 12F/25).

(R. at 61.)

> The ALJ weighed the medical source opinions of record as follows:

> As for medical opinions and prior administrative medical findings, the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings in your case. A record entry notes that [Plaintiff]'s treating physician, Dr. Zerick, would support [Plaintiff]'s application for disability as he is not able to return to his past work (Exhibit 3F/12). This is generally persuasive to the extent that [Plaintiff] cannot perform his past work, however not persuasive regarding other jobs existing in significant numbers in the national economy. The opinions of the state agency medical consultants who reviewed the evidence contained in [Plaintiff]'s file are somewhat persuasive, but the residual functional capacity assessment adopted in this decision is more restrictive than as found by the state agency medical consultants based on other evidence contained in the file, including subsequently acquired evidence (Exhibits 1A; 3A).

> In sum, the above defined residual functional capacity assessment is supported partially by the opinions of Dr. Zerick and the state agency component, and the evidence of record as a whole, as detailed above.

(R. at 62.)

### III. ADMINISTRATIVE DECISION

On December 4, 2019, the ALJ issued his decision. (R. at 54-68.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. (R. at 59.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since October 9, 2017, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, failed back syndrome, gastroesophageal reflux disease ("GERD"), and insomnia. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 60.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] as the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs; he can occasionally balance, stoop, kneel, crouch, or crawl; he can occasionally push or pull with the left lower extremity; and he must avoid all exposure to hazards such as heights and moving machinery.

(*Id.*)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a journeyman wireman electrician. (R. at 62.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 63.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since October 9, 2017, the alleged onset date.[2] (*Id.*)

### IV.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

---

[2] The alleged onset date corresponds to the date of Plaintiff's lumbar laminectomy performed by Dr. William R. Zerick. (R. at 270-308.)

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff sets forth two contentions of error: (1) the ALJ failed to adequately explain his finding at Step Three that Plaintiff did not meet or equal the criteria of Listing 1.04A; and (2) the ALJ erred when he determined that the Plaintiff was not entirely credible. (ECF No. 15).

### 1. Listing 1.04A

A plaintiff's impairment must meet every element of a Listing before the Commissioner

may conclude that he or she is disabled at step three of the sequential evaluation process. *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986). The plaintiff has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). Nevertheless, "[t]he burden of providing a. . . record. . . complete and detailed enough to enable the Secretary to make a disability determination rests with the [plaintiff]." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision denying benefits affirmed where medical evidence "almost establishes a disability" under Listing).

The starting point for the Court's analysis is Listing 1.04, as in effect at the time of the ALJ's decision, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

OR

> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

OR

>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

The ALJ found that Plaintiff's musculoskeletal impairments failed to meet this Listing because "medical evidence of record fails to establish that [Plaintiff]'s musculoskeletal impairments result in the inability to ambulate effectively as defined in 1.00B2b or the inability to perform fine and gross movements effectively as defined in 1.00B2c, as required by listing 1.04." (R. at 60.)[3] Plaintiff contends that the ALJ erred in concluding that his impairments did not meet Listing 1.04A.

In order to demonstrate that he met Listing 1.04A, Plaintiff was required to establish each of the following seven criteria

>(1) A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
>
>(2) resulting compromise of a nerve root (including the cauda equina) or the spinal cord,
>
>(3) evidence of nerve root compression characterized by neuro-anatomic distribution of pain,
>
>(4) limitation of motion of the spine,

---

[3] A plaintiff's inability to perform fine and gross movements effectively as defined in 1.00B2c is not relevant to a consideration of Listing 1.04. Plaintiff has not raised this as an issue and therefore the Court considers any claim of error relating to its inclusion in the ALJ's discussion to have been waived.

  (5) motor loss (atrophy with associated muscle weakness or muscle weakness [*sic*]) accompanied by sensory or reflex loss,

  (6) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine), and

  (7) the impairment has lasted or can be expected to last for a continuous period of at least 12 months.

According to Plaintiff, the medical evidence demonstrates nerve root compression characterized by neuro-anatomic distribution of pain and limitation of motion of the spine. (ECF No. 15 at 7.) Further, Plaintiff cites to a string of evidence, including his hearing testimony, which he contends demonstrates the various other criteria relevant to Listing 1.04A identified above. (*Id.* citing R. at 80-81; 313; 315-319; 323; and 373.) A review of this evidence reveals, however, that it does not support Plaintiff's contention. Certainly, medical records pre-dating Plaintiff's alleged onset date confirm a diagnosis of lumbar spinal stenosis, the existence of radiculopathy, and that Plaintiff had undergone a decompression of the S1 nerve root on May 19, 2017. (R. at 317, 318.) However, there is no evidence of the other relevant criteria, including specifically motor loss or positive straight-leg raising tests from both the sitting and supine positions. Plaintiff, in offering nothing beyond conclusory declarations, does not seriously contend otherwise.

Instead, Plaintiff argues that evidence supports "the finding that his impairments limit his ability to ambulate effectively [and] as a result, satisfy the requirements of Listing 1.04(A)". (ECF No. 15 at 8.) As the criteria set forth above demonstrates, this criterion is not relevant to Listing 1.04A. Further, to the extent Plaintiff may be suggesting that he has met the criteria for Listing 1.04C, the Undersigned disagrees.

9

The inability to ambulate effectively is "'an extreme limitation of the ability to walk.'" *Searer v. Comm'r of Soc. Sec.,* No. 3:18 CV 1035, 2019 WL 4126380, at *2 (N.D. Ohio Aug. 30, 2019) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00B2b(1). "To be able to ambulate effectively, an individual must be able to 'sustain[ ] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living' and must be able to travel to and from work or school without assistance." *Id.* (quoting § 1.00B2b(2). "Section 1.00B2b(2) sets forth a non-exhaustive list of examples of ineffective ambulation that includes "'the inability to walk a block at a reasonable pace on rough or uneven surfaces.'" *Id.* Additional examples "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id*. "'The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.'" *Anderson v. Saul*, No. 1:18-CV-2668-TMP, 2020 WL 1318805, at *4 (W.D. Tenn. Mar. 20, 2020) (quoting *Id*.).

With respect to the issue of ambulation, Plaintiff relies on the same string of cites, but this time for the proposition that "[t]he record consistently documents [his] difficulty with sustained ambulation due to low back pain; sciatica; numbness; and tingling." (ECF No. 15 at 7.) Again, however, the Undersigned's review of the record evidence, including the evidence specifically highlighted by Plaintiff, demonstrates that Plaintiff's argument relies on an inaccurate reading of the record. For example, at a consultation and evaluation on September 24,

2017, a date shortly before his onset date, Plaintiff was found to be "ambulat[ing] independently." (R. at 318.) Further, at a post-operative appointment on November 30, 2017, Plaintiff's gait and stance were described as normal and he was reported as "[a]mbulating with no assistive device." (R. at 320.) Additionally, exam notes dated June 13, 2018, state that Plaintiff "ambulates with a normal gait, which is not unsteady, lurching or unpredictable" and that he "does not require the use of a handheld assistive device." (R. at 380.)

To be sure, as noted, the ALJ's discussion of Listing 1.04 at Step Three is quite cursory. However, when read in its entirety, the ALJ's non-disability determination demonstrates that substantial evidence supports his Listing 1.04 conclusion. The ALJ noted the relevant medical evidence of record elsewhere in his determination. For example, the ALJ acknowledged Plaintiff's multiple lumbar surgeries, his ongoing treatment for radicular discomfort into the lower extremity, his use of medications, the lack of relief from physical therapy, and the course of chiropractic treatment. (R. at 61.) The ALJ also recognized that Plaintiff rated his sciatica pain level at 2/10 but that the pain worsens in the evening hours. (*Id.*) Plaintiff does not dispute the ALJ's recitation of this medical evidence. Rather, Plaintiff's argument appears to rely solely on his own interpretation of this medical evidence, not the evidence itself. Accordingly, Plaintiff failed to meet his burden of establishing that he met the criteria for any relevant subsection of Listing 1.04. *See Lett v. Colvin*, No. 1:13 CV 2517, 2015 WL 853425, at *17 (N.D. Ohio Feb. 26, 2015) (finding that plaintiff did not meet her burden where she failed to establish more recent evidence that she met the criteria for Listing 1.04A).

Plaintiff asserts that the ALJ's analysis is inadequate and cites *Reynolds* for the proposition that when performing a Listing analysis, an ALJ must "actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." 424 Fed. App'x at 416. In *Reynolds*, the ALJ found that the claimant had severe mental and physical impairments at Step Two, but at Step Three, the ALJ analyzed only whether the claimant's mental impairments met or equaled a Listing, and completely failed to assess whether the claimant's physical impairments met or equaled any Listings. *Id.* at 415–16. The Sixth Circuit Court of Appeals found that remand was appropriate because the ALJ "completely skipped an entire step of the necessary analysis." *Id.* In this case, by contrast, the ALJ did not completely fail to consider whether Plaintiff's physical impairments met any listed impairments. Here, the ALJ explicitly considered Listing 1.04. And although his analysis may have been brief, when combined with his discussion of the record evidence related to Plaintiff's spinal impairments, it provides sufficient articulation for adequate judicial review. Moreover, on several occasions, the Sixth Circuit has upheld an ALJ's sparse step three determination when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014) (*citing See Bledsoe v. Barnhart,* 165 Fed. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a Step Three medical equivalency determination, and finding no need to require the ALJ to "spell out every fact a second time")). Such is the case here. Accordingly, the Undersigned finds that the ALJ did not err when analyzing whether Plaintiff met the criteria for Listing 1.04.

In any event, as discussed above, Plaintiff cannot (and did not) point to evidence of several requirements for Listing 1.04A.  Therefore, Plaintiff cannot satisfy his burden of demonstrating that he meets all the criteria for Listing 1.04A.  Thus, even if the ALJ had erred when analyzing Listing 1.04, any such error would have been harmless.  For these reasons, the Undersigned concludes that Plaintiff's allegation of error lacks merit.

2. **Plaintiff's subjective complaints**

Plaintiff alleges that the ALJ erred when he assessed his subjective symptoms, formerly referred to as a credibility determination.  Specifically, Plaintiff alleges that the ALJ erred because he failed to consider that Plaintiff's persistent attempts to obtain pain relief enhanced his credibility as set forth in Social Security Ruling 16–3p, Evaluation of Symptoms in Disability Claims. (ECF No. 15 at 9-10).  The Undersigned disagrees.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; SSR 16–3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms.  Second, the ALJ "must. . .evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id*. In addition, there are seven factors set forth in SSR 16–3p that an ALJ will

consider. As relevant here, two of those factors are: (1) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (2) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3). Although an ALJ is not required to analyze all seven factors, he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

Here, the ALJ found that Plaintiff's symptoms did not limit Plaintiff's capacity to work as much as he had alleged. The ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Considering the subjective factors in this case pursuant to 20 CFR 416.929 and SSR 16-3p, the preponderance of evidence fails to substantiate the severity of claimant's allegation of disability. The undersigned finds that although he has medically determinable severe impairments, these impairments do not cause the degree of limitations alleged by claimant. The objective findings in this case are not consistent with disability. The limitations resulting from claimant's impairments would not preclude him from engaging in work activity within the parameters of the residual functional capacity assessment set forth above.

(R. at 61.)

The ALJ then summarized the record evidence acknowledging specifically Plaintiff's multiple efforts at pain relief, including his lumbar surgeries, treatment with various pain medications, and occasional chiropractic treatment. (R. at 61.) The ALJ also noted Plaintiff's ongoing complaints of pain made to various providers. At the same time, however, the ALJ noted that the objective medical findings failed to demonstrate disabling symptoms. This conclusion is supported by substantial evidence in the record confirming that, following his surgery on October 9, 2017, Plaintiff maintained a normal gait and did not require an assistive device. For example, at an internal medicine examination on June 13, 2018, Stephen Nutter, M.D., found that "[Plaintiff] ambulates with a normal gait;" and "does not require the use of a handheld assistive device. (R. at 380-382.) Further, several office progress notes from Dr. Terri Cook dated between December 13, 2018 and September 16, 2019, indicate that Plaintiff was comfortable and in no acute distress. (R. at 482, 487, 492.) Notably, taking all of this into account, the ALJ went on to formulate an RFC involving sedentary work despite prior administrative findings indicating that Plaintiff was capable of less restrictive light work. For these reasons, the Undersigned finds Plaintiff's claim that the ALJ did not consider his efforts to obtain pain relief to be wholly without merit.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   December 14, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                                                                    ELIZABETH A. PRESTON DEAVERS
                                                                                    UNITED STATES MAGISTRATE JUDGE